**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW, 10th Floor
Washington, DC  20036
Tel:  202-847-4030 | Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC  20005
Tel:  202-898-5843 | Fax:  202-682-1639

*Attorneys for Defendant Monsanto Company*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC  20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111
Tel:  415-675-3400 | Fax:  415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
Linda C. Hsu (CA Bar No. 239880)
(linda.hsu@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA  90401
Tel:  310-576-2100 | Fax:  310-576-2200

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No.:  3:16-md-02741-VC |
| This document relates to: | |
| *Harris v. Monsanto Co*., No. 3:16-cv-05786-VC | **DEFENDANT MONSANTO COMPANY'S AMENDED NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. CHADI NABHAN** |
| *El-Hakam v. Monsanto Co*., No. 3:21-cv-09937-VC | |
| *Romano v. Monsanto Co*., No. 3:20-cv-06194-VC | Hearing Date:  To be determined by the Court |
| *Daulton v. Monsanto Co.*, No. 3:20-cv-08518-VC | Hearing Time:  To be determined by the Court |
| *Belfleur v. Monsanto Co*., No. 3:20-cv-00621-VC | Hearing Place:  San Francisco Courthouse, Courtroom 4 – 17th Fl. |
| *Berenfeld v. Monsanto Co*., No. 3:18-cv-01428-VC | |
| *Iona v. Monsanto Co*., No. 3:20-cv-02404-VC | |
| *Thompson v. Monsanto Co*., No. 3:20-cv-08851-VC | |
| *Holmes v. Monsanto Co.*, No. 3:20-cv-03363-VC | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on a date and time to be determined by the Court, in Courtroom 4 of the U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Amended Motion to Exclude Testimony of Plaintiffs' Expert Dr. Chadhi Nabhan. Monsanto seeks an order excluding the opinion of Dr. Nabhan under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

On August 9, 2024, Monsanto originally filed its motion to exclude Dr. Nabhan. *See* ECF No. 18992. The Court then granted Monsanto's Motion to Replace Previously Filed Exhibits with Redacted Version. *See* 09/04/2024 Order, ECF No. 19155. Consistent with the Court's directive,[1] Monsanto hereby refiles its motion to exclude Dr. Nabhan, this time with revised exhibits G and M that include the desired redactions and are intended to replace the following unredacted filings:

1.  *In Re Roundup Prod. Liab. Litigation*, Case No. 3:16-md-02741-VC (main):

    a.   <u>ECF No. 18992-8</u>: Document entitled "Exhibit G - Nabhan Expert Report (Romano)," filed 08/09/2024 in support of Monsanto's Motion to Exclude Testimony of Dr. Chadhi Nabhan, ECF No. 18992;

    b.   <u>ECF No. 18992-14</u>: Document entitled "Exhibit M - Weiss Expert Report," filed 08/09/2024 in support of Monsanto's Motion to Exclude Testimony of Dr. Chadhi Nabhan, ECF No. 18992.

2.  *Romano v. Monsanto Company*, Case No. 3:20-cv-06194-VC (member):

    a.   <u>ECF No. 21-8</u>: Document entitled "Exhibit G - Nabhan Expert Report

---

[1] The Court's directive, included in an email sent by the Courtroom Deputy to the Honorable Vince Chhabria to the parties' counsel on September 13, 2024, stated as follows:

> The Court previously granted Monsanto's Motion to Replace Previously Filed Exhibits with Redacted Versions (Dkt. No. 19037) at Dkt. No. 19155. However, the Clerk's Office can only remove documents that have been filed, not replace them with other documents. Monsanto should refile its Motion to Exclude Expert Testimony of Dr. Nabhan (Dkt. No. 18992) with the desired redactions and specify which unredacted documents they are intended to replace. The Clerk's Office will then remove the unredacted filing.

(Romano)," filed 08/09/2024 in support of Monsanto's Motion to Exclude Testimony of Dr. Chadhi Nabhan, ECF No. 21;

        b.     <u>ECF No. 21-14</u>: Document entitled "Exhibit M - Weiss Expert Report," filed 08/09/2024 in support of Monsanto's Motion to Exclude Testimony of Dr. Chadhi Nabhan, ECF No. 21.

Dated:  September 17, 2024               Respectfully submitted,

                                      BRYAN CAVE LEIGHTON PAISNER LLP

                                      By: <u> /s/ Linda C. Hsu             </u>
                                             Linda C. Hsu
                                      Counsel for Defendant Monsanto Company

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ........................................................................................................... 2

      A.      Dr. Nabhan is disclosed to provide case-specific expert testimony........................ 2

      B.      Dr. Nabhan opines on diagnosis, treatment, and prognosis for NHL
             subtypes, asserting that each plaintiff was properly diagnosed and treated............ 3

            1.      He says that Mr. Harris's DLBCL was properly diagnosed and treated but
                 needs life-long care due to the risk of recurrence of disease ...................... 3

            2.      He says that Mr. El-Hakam's HCL was aptly diagnosed and treated but
                 requires life-long care due to the risk of recurrence of disease................... 4

            3.      He says Mr. Romano's FL was aptly diagnosed and treated but requires
                 life-long care due to the risk of recurrence of disease ................................. 5

            4.      Mr. Daulton's MCL was aptly diagnosed and treated but fared poorly ...... 5

III.    LEGAL STANDARD ................................................................................................... 6

IV.     ARGUMENT ................................................................................................................ 7

      A.      The Court must preclude Dr. Nabhan from testifying about causation .................. 7

      B.      The Court must preclude Dr. Nabhan from testifying at trial about the
             reasonableness and necessity of medical expenses................................................. 12

      C.      The Court must preclude Dr. Nabhan from offering any "pain and
             suffering" testimony, including the psychological effects of NHL on any of
             the Plaintiffs ........................................................................................................... 13

V.      CONCLUSION ........................................................................................................... 15

AMENDED MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. CHADHI NABHAN

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Beagle v. Vasold,*

5
    65 Cal. 2d 166 (1966) ................................................................................. 14, 15

6

*Belfleur v. Monsanto Co.,*

7
    No. 20-00621 ............................................................................................. 2, 8

8

*Berenfeld v. Monsanto Co.,*
    No. 18-01428 ............................................................................................... 2

9

*Capelouto v. Kaiser Found. Hosps.,*

10
    7 Cal. 3d 889 (1972) ................................................................................... 14

11

*Clausen v. M/V New Carissa,*
    339 F.3d 1049 (9th Cir. 2003)...................................................................... 10

12

*Daubert v. Merrell Dow Pharm., Inc.,*

13
    509 U.S. 579 (1993)............................................................................ 2, 7, 12, 15

14

*Daubert v. Merrell Dow Pharms., Inc.,*

15
    43 F.3d 1311 (9th Cir. 1995)....................................................................... 7

16

*Daulton v. Monsanto Co.,*
    No. 3:20-08518 ................................................................................. *passim*

17

*El-Hakam v. Monsanto Co.,*

18
    No. 21-09937 .................................................................................... *passim*

19

*Goodman v. Staples The Off. Superstore, LLC,*

20
    644 F.3d 817 (9th Cir. 2011)............................................................ 1, 8, 13, 14

21

*Hardeman v. Monsanto,*
    997 F.3d 941 (9th Cir 2021)........................................................................ 10

22

*Harris v. Monsanto Co.,*

23
    No. 16-05786 .................................................................................... *passim*

24

*Holmes v. Monsanto Co.,*

25
    No. 3:20-03363 .......................................................................................... 2, 8

26

*Iona v. Monsanto Co.,*
    No. 20-02404 ............................................................................................. 2, 8

27

*Kumho Tire Co., Ltd. v. Carmichael,*

28
    526 U.S. 137 (1999)................................................................................... 7

*Merch. v. Corizon Health, Inc.*,
    993 F.3d 733 (9th Cir. 2021) .................................................................... 1, 8, 13, 14

*Pearl v. City of Los Angeles*,
    36 Cal. App. 5th 475 (2019) .................................................................................. 14

*Romano v. Monsanto Co.*,
    No. 20-06194 ................................................................................................... *passim*

*In re Roundup Prod. Liab. Litig.*,
    358 F. Supp. 3d 956 (N.D. Cal. 2019), *aff'd sub nom. Hardeman v. Monsanto*,
    997 F.3d 941 (9ᵗʰ Cir 2021) ....................................................................... 1, 8, 11, 12

*In re Roundup Prod. Liab. Litig.*,
    390 F. Supp. 3d 1102 (N.D. Cal. 2018), *aff'd sub nom. Hardeman v. Monsanto*
    *Co.*, 997 F.3d 941 (9th Cir. 2021) ............................................................... 1, 11, 12

*In re Roundup Prod. Liab. Litig.*,
    No. 16-02741, 2023 WL 7928751 (N.D. Cal. Nov. 15, 2023) .............................. 12

*Sardis v. Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021) .................................................................................... 7

*Thompson v. Monsanto Co.*,
    No. 3:20-08851 ........................................................................................................ 2, 8

*United States v. Barton*,
    909 F.3d 1323 (11th Cir. 2018) ............................................................................... 7

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000) ................................................................................. 2, 7, 12, 15

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017) ............................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B)(i) .................................................................... *passim*

Fed. R. Civ. P. 37(c)(1) ..................................................................................... 8

Fed. R. Civ. P. 702 (c)-(d) ............................................................................. 12

Fed. R. Evid. 702 ................................................................................... *passim*

Fed. R. Evid. 702(a) ........................................................................................ 15

1    **I.    INTRODUCTION**

2        The Court should preclude Dr. Nabhan from offering any opinions on causation, the

3    reasonableness and necessity of Plaintiffs' medical expenses, and Plaintiffs' pain and suffering

4    because these opinions are inadequately disclosed and otherwise inadmissible under Rule 702. Dr.

5    Nabhan should be permitted to testify only about Plaintiffs' cancer diagnoses and prognoses.

6        Plaintiffs in *Harris*, *El-Hakam*, *Romano*, and *Daulton* did not properly disclose Dr. Nabhan

7    to opine on causation, the reasonableness and necessity of Plaintiffs' medical expenses, or

8    Plaintiffs' pain and suffering. Dr. Nabhan's disclosures do not contain the word "cause," and his

9    reports only state in passing that Plaintiffs' medical conditions did not "cause the diagnosis of

10   NHL" without any explanation or analysis of NHL causes. Similarly, although Dr. Nabhan's

11   disclosures state he will opine on "the reasonableness and necessity of [Plaintiffs'] medical

12   expenses" and their "pain and suffering," his expert reports omit these opinions. These opinions

13   were therefore not properly disclosed and should be stricken from trial. *See, e.g.*, Fed. R. Civ. P.

14   26(a)(2)(B)(i) (requiring a "written report" containing, among other things, "a complete statement

15   of all opinions"); *id.* § 37(c)(1) ("If a party fails to provide information or identify a witness as

16   required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial . . . .");

17   *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (precluding

18   experts from testifying because plaintiff failed to disclose the experts' reports in a timely manner);

19   *accord Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 739-42 (9th Cir. 2021).

20       Dr. Nabhan should also be precluded from offering these opinions under Rule 702. The

21   Court has previously excluded his causation opinions as unreliable on prior occasions. *See In re*

22   *Roundup Prod. Liab. Litig. ("Roundup MDL PTO 45")*, 390 F. Supp. 3d 1102, 1149 (N.D. Cal.

23   2018), *aff'd sub nom. Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021); *In re Roundup*

24   *Prod. Liab. Litig. ("Roundup MDL PTO 85")*, 358 F. Supp. 3d 956, 958 (N.D. Cal. 2019), *aff'd*

25   *sub nom. Hardeman*, 997 F.3d at 941. Moreover, Dr. Nabhan is not qualified to testify about

26   "reasonableness" of medical bills because he has no recent, relevant experience assessing the cost

27   of clinical cancer treatment. Finally, Dr. Nabhan did not treat these Plaintiffs' cancers, did not

28   observe Plaintiffs' pain and suffering, and has no first-hand knowledge of Plaintiffs' pain and

suffering. He should not be allowed to testify generally about the pain and suffering associated with cancer treatments or regurgitate fact-witness hearsay under the guise of expert testimony. Rule 702's "exacting standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000), require far "more than subjective belief or unsupported speculation," *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993), than that which Dr. Nabhan provides.

## II.    BACKGROUND

### A.    Dr. Nabhan is disclosed to provide case-specific expert testimony

Dr. Chadhi Nabhan, a hematologist and oncologist, has been disclosed as a "case specific" expert in four cases: *Harris v. Monsanto Co.*, No. 16-05786; *El-Hakam v. Monsanto Co.*, No. 21-09937; *Romano v. Monsanto Co.*, No. 20-06194; and *Daulton v. Monsanto Co.*, No. 3:20-08518.

Dr. Nabhan has also been designated as a "general causation" expert in five other cases: *Belfleur v. Monsanto Co.*, No. 20-00621; *Berenfeld v. Monsanto Co.*, No. 18-01428; *Iona v. Monsanto Co.*, No. 20-02404; *Thompson v. Monsanto Co.*, No. 3:20-08851; *Holmes v. Monsanto Co.*, No. 3:20-03363.

As to *Harris*, *El-Hakam*, *Romano*, and *Daulton*, Plaintiffs' Rule 26 disclosures explicitly state that Dr. Nabhan will testify about **five topics** as to Plaintiffs:

- clinical course;
- pain and suffering;
- reasonableness and necessity of medical expenses and treatment;
- except as to Mr. Daulton, prognosis; and
- except as to Mr. Daulton, issues relating to the effects of cancer diagnosis and treatment as well as the likelihood of developing cancer in the future.

*See* Declaration of Linda C. Hsu in Support of Defendant Monsanto Company's Motion to Exclude Testimony of Dr. Chadhi Nabhan ("Hsu Decl."), Ex. A ("*Harris* Expert Disclosure") at 7; *id.*, Ex. B ("*El-Hakam* Expert Disclosure") at 7; *id.*, Ex. C ("*Romano* Expert Disclosure") at 7; *id.*, Ex. D ("*Daulton* Expert Disclosure") at 7.

Dr. Nabhan, however, limits his written reports to the following **three topics**:

- NHL diagnosis;

1        • treatment (including side effects and adverse events, and disease course); and

2        • prognosis.

3    *See, e.g., id.*, Ex. E ("Nabhan *Harris* Report") at 6, 10-11; *id.*, Ex. F ("Nabhan *El-Hakam* Report")

4    at 6, 9-10; *id.*, Ex. G ("Nabhan *Romano* Report") at 6, 9-10; *id.*, Ex. H ("Nabhan *Daulton* Report")

5    at 6, 10-11. That is, he neither opines on "reasonableness and necessity of medical expenses" nor

6    on pain and suffering.

7        Dr. Nabhan also conceded during his depositions that he is not opining regarding general

8    or specific causation in these cases. *See, e.g., id.*, Ex. I ("Nabhan *Romano* Dep. Tr.") at 20:11-18

9    (testifying that he is not offering an opinion that Roundup causes NHL generally or specifically);

10    *id.*, Ex. J ("Nabhan *Daulton* Dep. Tr.") at 10:16-11:10 (testifying that he was not offering any

11    specific or general causation opinions and instead offering opinions as to Mr. Daulton's diagnosis,

12    treatment, and prognosis). Yet he dabbles into those topics in his report and during his deposition.

13    *See, e.g., id.*, Ex. E (Nabhan *Harris* Report) at 8 ("None of these medical conditions cause the

14    diagnosis of NHL . . . ."); *id.*, Ex. F (Nabhan *El-Hakam* Report) at 8 ("None of these medical

15    conditions are causative risk factors for the diagnosis NHL [*sic*] and do not cause the disease.");

16    *id.*, Ex. H (Nabhan *Daulton* Report) at 9 ("None of these medical conditions are causative risk

17    factors for NHL and do not cause NHL . . . ."); *see also id.*, Ex. I (Nabhan *Romano* Dep. Tr.) at

18    138:7-139:19 (plaintiff's counsel eliciting related testimony from Dr. Nabhan). Tellingly, he does

19    so without citing any literature in support of those opinions. And to be sure, he has not included

20    any opinions in his reports regarding causation as it relates to Roundup or glyphosate.

21    **B.    Dr. Nabhan opines on diagnosis, treatment, and prognosis for NHL subtypes,**

22    **asserting that each plaintiff was properly diagnosed and treated**

23    Dr. Nabhan provides the following opinions in his expert reports as to each of the Plaintiffs:

24    **1.    He says that Mr. Harris's DLBCL was properly diagnosed and treated**

25    **but needs life-long care due to the risk of recurrence of disease**

26    Mr. Harris was diagnosed with Diffuse Large B-Cell Lymphoma (DLBCL) in October

27    2012, when he was 52 years old. *Id.*, Ex. E (Nabhan *Harris* Report) at 7. He underwent

28    chemotherapy and stem cell transplant between June and July 2013. *Id.* Subsequent imaging scans

were all negative for DLBCL and he has continued to be in remission from it. *Id*. at 7-8.

His medical, social, and family history includes the following: hypertension, suspected non-melanoma skin cancer, prior alcohol use, renal insufficiency, surgical history, and no family history of cancer. *Id*. at 8-9.[2] He reported to Dr. Nabhan over a 60-minute call in May 2024 that he tolerated the chemotherapy reasonably well, now "feels well but not as energetic," and "feels healthy except the neuropathy." *Id*. at 9.

Dr. Nabhan then provides the following case-specific opinion: (1) Mr. Harris's prior medical conditions did not cause his DLBCL; (2) he received the appropriate diagnosis and treatment; (3) his continued remission more than 10 years after his treatment is a good prognostic sign; but (4) he remains at risk of recurrent diseases, requiring life-long follow-up. *Id*. at 8-11.

### 2.     He says that Mr. El-Hakam's HCL was aptly diagnosed and treated but requires life-long care due to the risk of recurrence of disease

Mr. El-Hakam was diagnosed with Hairy Cell Leukemia (HCL) in December 2019, when he was 74 years old. *Id.*, Ex. F (Nabhan *El-Hakam* Report) at 7. He was treated with cladribine (2-CDA) and rituximab in January 2020. *Id*. He showed no evidence of HCL after April 2020. *Id*.

His medical, social, and family history includes the following: atrial fibrillation diagnosed in June 2019, coronary artery disease, prior smoking, no alcohol use, brother suspected of having colon cancer, and one of his sisters may have had liver cancer. *Id*. at 7-8.[3]

Dr. Nabhan then provides the following case-specific opinion: (1) Mr. El-Hakam's prior medical conditions did not cause his HCL; (2) he received the appropriate diagnosis and treatment; (3) he is doing well and is in remission for almost 4 years now, which is a good sign; but (4) he is at some small risk of HCL or a different lymphoma recurring or a secondary cancer developing,

---

[2] Dr. Nabhan's report, however, either ignores or glosses over the following risk factors: obesity, hypertension, hypercholesterolemia, a long history of daily alcohol use (typically consuming twelve or more drinks per week), and a history of non-melanoma skin cancer in approximately 1990 (i.e., 25 years prior to April 2015, when this was noted). *See generally* Hsu Decl., Ex. K (Fleming *Harris* Report).

[3] Dr. Nabhan's report either ignores or glosses over at least the following risk factors: age, obesity, smoking, hypercholesterolemia, and a family history of cancer. *See generally* Hsu Decl., Ex. L (Woda *El-Hakam* Report).

1  which requires life-long follow-up. *Id*. at 8-10.

2          **3.      He says Mr. Romano's FL was aptly diagnosed and treated but requires**

3          **life-long care due to the risk of recurrence of disease**

4        Mr. Romano was diagnosed with follicular lymphoma (FL) in July 2018, when he was 28

5  or 29 years old. *Id.*, Ex. G (Nabhan *Romano* Report) at 7. He was treated with Bendamustine and

6  Rituximab (BR regimen) in October 2018. *Id*. He showed no evidence of FL after January 2019.

7  *Id*. His medical, social, and family history includes the following: gluteal abscess and dental

8  surgeries, prior smoking and tobacco use, occasional alcohol use, working at an oil and gas

9  company in management, and his father having been diagnosed with prostate cancer. *Id*. at 8.[4]

10        Dr. Nabhan then provides the following case-specific opinion: (1) he received the

11  appropriate diagnosis and treatment; (2) his overall prognosis is good given that he has maintained

12  a complete remission even 5 years after finishing his treatment; but (3) he remains at the risk of his

13  FL relapsing or another cancer developing, which requires life-long follow-up. *Id*. at 9-11.

14          **4.      Mr. Daulton's MCL was aptly diagnosed and treated but fared poorly**

15        Mr. Daulton was diagnosed with stage IV Mantle Cell Lymphoma (MCL) in June 2004,

16  when he was 61 years old. *Id.*, Ex. H (Nabhan *Daulton* Report) at 7. He was treated with R-CHOP

17  (Rituximab, Cyclophosphamide, Adriamycin, Vincristine, and Prednisone), a form of

18  chemotherapy through September 2004. *Id*. He showed no evidence of MCL after October 2004.

19  *Id*. He received two cycles of Rituximab and Zevalin in November 2004 and underwent high-dose

20  chemotherapy followed by stem cell transplant in November 2004. *Id*. After the transplant, he was

21  given rituximab infusions. *Id*. In March 2011, his MCL relapsed. *Id*. at 7-8. He received single

22  agent rituximab in April 2011. *Id*. at 8. He also underwent radiation therapy between December

23  2011 and January 2012. *Id*. Following radiation, his MCL went into remission. *Id*. In September

24  2019, however, his MCL again relapsed. *Id*. He underwent a bone marrow transplant in October

25  2019, followed by the first cycle of R-CHOP in October 2019 and the fourth and final cycle of R-

26  CHOP in December 2019. *Id*. He showed no signs of MCL in November 2019. *Id*. But a scan in

27
28
---
[4] Dr. Nabhan's report either ignores or glosses over at least the following risk factors: morbid obesity, smoking, and a family history of cancer. *See generally* Hsu Decl., Ex. M (Weiss *Romano* Report).

1  January 2020 showed persistent pelvic disease, which was treated with BR regimen, with first cycle

2  given the same month. *Id*. In April 2020, he was diagnosed with dilated cardiomyopathy (due to

3  his NHL treatment) then died the same month. *Id*. at 8-9.

4     His medical, social, and family history includes the following: coronary artery diseases,

5  diabetes, prior smoking (two packs per day), prior alcohol use, hypertension, sister had colon

6  cancer, daughter had breast cancer at the age of 47, mother had breast cancer, and father had

7  coronary artery disease. *Id*. at 9-10.[5]

8     Dr. Nabhan then provides the following case-specific opinion: (1) Mr. Daulton's prior

9  medical conditions did not cause his MCL; (2) he received the appropriate diagnosis and treatment;

10  and (3) prognosis of his MCL was poor because he was relapsing for the second time, when he was

11  76 years of age with limited treatment choices at that time. *Id.* at 9-11.

12  **III.    LEGAL STANDARD**

13     Federal Rule of Evidence 702, which was amended effective December 1, 2023, sets forth

14  the following standard for the admission of expert opinion testimony: "A witness who is qualified

15  as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony

16  if "the proponent demonstrates to the court" that it is "more likely than not" that: (a) "the expert's

17  scientific, technical, or other specialized knowledge will help the trier of fact to understand the

18  evidence or determine a fact in issue"; (b) the expert's "testimony is based on sufficient facts and

19  data"; (c) the expert's "testimony is the product of reliable principles and methods"; and (d) "the

20  expert's opinion reflects a reliable application of the principles and methods to the facts of the

21  case." Fed. R. Evid. 702.

22     To that end, the trial court is charged with the responsibility of acting as a gatekeeper to

23  "ensure that any and all scientific testimony . . . is . . . reliable." *Daubert v. Merrell Dow Pharm.,*

24  *Inc.*, 509 U.S. 579, 589 (1993). *Daubert* created "exacting standards of reliability," *Weisgram*, 528

25  U.S. at 455, which require far "more than subjective belief or unsupported speculation," *Daubert*,

26  509 U.S. at 590. *Daubert*'s objective "is to make certain that an expert . . . employs in the courtroom

27  ───────────────

28  [5] Dr. Nabhan's report either ignores or glosses over at least the following risk factors: diabetes, smoking, alcohol use, and a family history of cancer. *See generally* Hsu Decl., Ex. N (Nichols *Daulton* Report).

the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Thus, "in determining whether proposed expert testimony amounts to good science, [the court] may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Because Rule 702 grants experts "wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation," "[e]xpert evidence can be both powerful and quite misleading." *Id.* at 592, 595 (citations and internal quotation marks omitted). As such, "the importance of [the trial court's] gatekeeping function cannot be overstated." *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018) (cleaned up); *accord Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283 (4th Cir. 2021). That much is confirmed by the Advisory Committee's Note to the 2023 Amendments, which makes clear that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology" are not "questions of weight" for the jury. Fed. R. Evid. 702, Advisory Comm. Notes, 2023 Amendments.[6]  Rule 702(d) in particular requires "that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id*. In other words, the Rule "does not permit the expert to make claims that are unsupported by the expert's basis and methodology." *Id*.

## IV.    ARGUMENT

### A.    The Court must preclude Dr. Nabhan from testifying about causation

Dr. Nabhan's causation opinions must be excluded.[7] As an initial matter, he has not been

---

[6] That amendment was motivated by the Advisory Committee on Evidence Rules' observation regarding the "pervasive problem" that courts were not applying the preponderance standard of admissibility to Rule 702's requirements of sufficiency of basis and reliable application of principles and methods, instead holding that such issues were ones of weight for the jury." *Sardis*, 10 F.4th at 283-84. The Committee emphasized that rulings which have held "the critical questions of the sufficiency of an expert's basis for his testimony, and the application of the expert's methodology, are generally questions of weight and not admissibility" "are an *incorrect application* of Rules 702 and 104(a)." *Id.* at 284 (emphasis added).

[7] Dr. Nabhan has been designated as a "general causation" expert in five other cases: *Belfleur*, *Berenfel*, *Iona*, *Thompson*, and *Holmes*. *See supra* § II.A. Because Plaintiffs served no "written report" there containing, among other things, "a complete statement of all opinions [Dr. Nabhan] will express and the basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B)(i), the Court must exclude his general causation testimony, *id*. § 37(c)(1); *Goodman*, 644 F.3d at 827; *accord Corizon*

AMENDED MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. CHADHI NABHAN

1  designated for causation, and has been disclosed in these cases to provide merely case-specific

2  testimony relating to diagnosis, treatment, and prognosis—indeed, Plaintiffs' expert disclosures do

3  not even mention the words "cause" or "causation" as to him.  *Cf.* Hsu Decl., Ex. A (*Harris* Expert

4  Disclosure) at 7; *id.*, Ex. B (*El-Hakam* Expert Disclosure) at 7; *id.*, Ex. C (*Romano* Expert

5  Disclosure) at 7; *id.*, Ex. D (*Daulton* Expert Disclosure) at 7.

6          Tellingly, he also confirmed so during his depositions, disavowing any causation testimony.

7  *See, e.g.*, *id.*, Ex. I (Nabhan *Romano* Dep. Tr.) at 20:11-18 (testifying that he is not offering an

8  opinion that Roundup causes NHL generally or specifically); *id.*, Ex. J (Nabhan *Daulton* Dep. Tr.)

9  at 10:16-11:10 (testifying that he was offering opinions as to Mr. Daulton's diagnosis, treatment,

10  and prognosis); *id*. at 11:12-14 (plaintiff's counsel confirming so too: "I can confirm as well. Dr.

11  Nabhan is not here to offer causation opinions of any time, either general or case specific."); *id*. at

12  12:15-13:24 (conceding that Mr. Daulton's medical issues are relevant to his opinion about Mr.

13  Daulton's diagnosis and is not intended to provide a causation opinion); *id.*, Ex. I (Nabhan *Romano*

14  Dep. Tr.) at 20:11-18 (testifying that he is not offering an opinion that Roundup causes NHL

---

15  *Health*, 993 F.3d at 739-42. To be sure, this Court has previously excluded his general causation
16  opinion as unreliable because he showed undue deference to and uncritical reliance on a monograph
     by the International Agency for Research on Cancer ("IARC") to classify glyphosate as "probably
17  carcinogenic to humans" and a lack of objective analysis of relevant epidemiological literature,
     stating as follows:
18

19          The primary problem for the plaintiffs, however, is Dr. Nabhan's
            **uncritical reliance** on IARC's conclusions. During the *Daubert*
20          hearing, Dr. Nabhan all but admitted that he reached his conclusion
            regarding glyphosate upon reading the IARC report, and that
21          ***contrary new evidence was unlikely to shake his faith in IARC's
            conclusion***. . . .  The deference to IARC that Dr. Nabhan
22          demonstrated . . . is not a reliable way to reach a general causation
            opinion. [His] report also did not demonstrate that he engaged in his
23          own ***objective analysis of the epidemiologic literature***. Although he
            summarized the relevant studies, he said little about how or whether
24          they addressed possible bias or confounding, for instance.

25  *Id.* at 1148 (emphases added); *see also Roundup MDL PTO 85*, 358 F. Supp. 3d at 958 ("Dr. Chadhi
26  Nabhan did offer a general causation opinion, but it was excluded on the basis that he failed to offer
     his own analysis of the relevant studies, instead relying excessively on IARC's conclusions."). So
27  too here: Even if contrary new epidemiological evidence have surfaced since then in these cases,
     the Court should still hold Dr. Nabhan to his words that "contrary new evidence was unlikely to
28  shake his faith in IARC's conclusion," which is "not a reliable way to reach a general causation
     opinion," *id.*, and exclude any related opinions that he might try to provide at the trial.

generally or specifically). That alone suffices for the Court to preclude him from testifying at trial about causation.

Yet Dr. Nabhan appears to have touched upon some issues regarding specific causation opinions in his expert reports—just not as to Roundup and/or glyphosate. *See, e.g.*, *id.*, Ex. E (Nabhan *Harris* Report) at 8 ("None of these medical conditions cause the diagnosis of NHL, including his renal insufficiency, surgical history, prior alcohol use, or the family history of cancer as described below."); *id.*, Ex. F (Nabhan *El-Hakam* Report) at 8 ("None of these medical conditions are causative risk factors for the diagnosis NHL [*sic*] and do not cause the disease."); *id.*, Ex. H (Nabhan *Daulton* Report) at 9 ("None of these medical conditions are causative risk factors for NHL and do not cause NHL, including his prior smoking history, prior alcohol use, or the family history of cancer as described below."). He similarly testified during his deposition— without providing *any* basis whatsoever—that medical, family, and social history listed in his report are not risk factors for developing NHL generally or FL specifically. *Id.*, Ex. I (Nabhan *Romano* Dep. Tr.) at 138:7-139:19. Such statements summarily excluding any medical conditions as cause of the NHL subtype at issue and made merely in passing—without any explanation or analysis of NHL causes—suffices as neither a "complete" disclosure under Fed. R. Civ. P. 26(a)(2)(B)(i) nor a reliable opinion under Fed. R. Evid. 702 because it is not "based on sufficient facts and data."

After all, to establish specific causation, experts must show that the NHL at issue was caused by glyphosate, rather than some other risk factor. To do so, experts use "differential diagnosis," which starts with "ruling in" all potential risk factors, then "ruling out" the ones as to which there is no plausible evidence of causation, and then determining the most likely risk among those that cannot be excluded. *Hardeman*, 997 F.3d at 965; *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1234 (9th Cir. 2017); *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003). Experts reliably use differential diagnosis where they "rule" in a risk factor based on the epidemiological evidence supporting the underlying general causation opinions. *Id.* at 966.

Not so here: Dr. Nabhan's specific causation opinion, set forth in a conclusory manner in his report, fails at the ruling-in step because it, as an initial matter, necessarily rests on his own flawed general causation opinion. *See supra* § IV.A n.6 (laying out the reasons for excluding Dr.

Nabhan's general causation opinion). He has not referenced—let alone critically and objectively

engaged with—any other general causation expert opinion or epidemiological literature ruling out

such risk factors. Instead, he inexplicably avers **as an absolute** that none of the medical, social, or

family conditions is a causative risk factor for NHL. For example, as to Mr. Daulton, he has opined

that "[n]one of [his] medical conditions are causative risk factors for NHL and do not cause NHL,

including his prior smoking history, prior alcohol use, or the family history of cancer as described

below." *See* Hsu Decl., Ex. H (Nabhan *Daulton* Report) at 9. That makes it plain that he has "ruled

in" none of these conditions, ignoring them altogether as risk factors. Indeed, he confirmed so

during his deposition, not "consider[ing]" smoking as even a potential "risk factor at all," indicating

that he excludes smoking at the "ruling in" step of the differential diagnosis and dismissing the

proposition that smoking can cause NHL, even though he was "aware" of epidemiological evidence

to the contrary:

> Q. . . . [A]re you aware that there is literature associating smoking
> with the development of NHL?
>
> . . .
>
> A. There is literature, Counsel, that associates everything with
> everything, but the reality is smoking does not really cause non-
> Hodgkin lymphoma, and *we don't really, as lymphoma specialists,*
> *consider it  a  risk  factor  at  all*. [¶] I am aware of papers that
> sometimes link two things together. That, by itself, is not really
> convincing evidence in my opinion to assume that this means that
> this leads to the actual diagnosis of disease.

*Id.*, Ex. J (Nabhan *Daulton* Dep. Tr.) at 14:1-17 (emphases added). He provides no reason for not

"ruling in" these risk factors to NHL—critically and objectively examining, for example,

epidemiological evidence—and instead invokes no more than his say-so, even though he explicitly

acknowledges that there is epidemiological evidence to the contrary. *Roundup MDL PTO 45*, 390

F. Supp. 3d at 1148 (excluding Dr. Nabhan's general causation opinion because, among other

things, he "did not demonstrate that he engaged in his own objective analysis of the epidemiologic

literature").

      In fact, Dr. Nabhan's conclusory and unreliable approach here on specific causation tracks

his approach earlier in these proceedings when he opined that Plaintiffs' NHL cannot be considered

AMENDED MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. CHADHI NABHAN

idiopathic simply because their Roundup exposure was significant. *Roundup MDL PTO 85*, 358 F. Supp. 3d at 961. When the Court pressed him further, his response "crossed into the realm of *junk science*," opinions that the Court excluded. *Id.* (emphasis added). As but one instance, the Court excluded Dr. Nabhan's categorical opinion that using Roundup more than two days per year or more than ten days in their lifetime doubles the risk of developing NHL—notably, the Court found that assertion "inaccurate, misleading, and untethered to any sound scientific method." *Id.* The Court relatedly prohibited his testimony that "glyphosate is a substantial causative factor for anyone who exceeds two days per year or ten lifetime days of Roundup use . . . ." *Id.* The Court similarly barred Dr. Nabhan from suggesting that "the risks posed by glyphosate are similar to those posed by smoking" or invoking "the uncertainty from decades ago on the dangers of smoking to argue that "it will eventually become obvious that glyphosate causes NHL." *Id.* at 962. The Court found that comparison "highly speculative" and having "limited probative value . . . ." *Id.*

So too here: Dr. Nabhan's opinion—categorically failing to "rule in," for example, smoking and obesity as risk factors for NHL—flies in the face of epidemiological evidence linking these risk factors to NHL. *Compare* Hsu Decl., Ex. J (Nabhan *Daulton* Dep. Tr.) at 45:17-46:3 (acknowledging that smoking can cause inflammation and lower immunity), *with id*. at 45:4-7 (denying that smoking can cause cancer); *see also id*. at 14:1-17 (not "consider[ing]" smoking as even a potential "risk factor at all," dismissing the proposition that smoking can cause NHL, even though he was "aware" of epidemiological evidence to the contrary).[8] Worse still, that he has not even considered it worthwhile to engage with related epidemiological evidence. *Cf. Roundup MDL PTO 45*, 390 F. Supp. 3d at 1148 (excluding Dr. Nabhan's general causation opinion because, among other things, he "did not demonstrate that he engaged in his own objective analysis of the epidemiologic literature"); *In re Roundup Prod. Liab. Litig.*, No. 16-02741, 2023 WL 7928751, at

---

[8] Monsanto also incorporates herein by reference its arguments presented in Monsanto Company's Omnibus Motion to Exclude Plaintiffs' Wave VII General Causation Experts and for Summary Judgment; *see also Roundup MDL PTO 85*, 358 F. Supp. 3d at 958 (making clear that ruling-in aspect of the differential diagnosis may properly rely on epidemiological studies: "Monsanto's primary criticism of the ruling-in process – namely, that the specific causation experts improperly ruled in glyphosate exposure by cherry-picking favorable epidemiological studies – is off point. As this Court has previously ruled, the specific causation experts are permitted to build from the plaintiffs' admissible general causation opinions.").

*1 (N.D. Cal. Nov. 15, 2023) (excluding general causation experts because "they did not personally engage with and evaluate the scientific literature they rely on"). That makes clear the infirmity in his analytical approach. As such, his testimony that the medical, social, and family history relevant here cannot be ruled in as risk factors is untethered from the facts of this, or put another way, not the product of reliable principles and methods or reflects a reliable application of the principles and methods to the facts of this case, Fed. R. Civ. P. 702 (c)-(d), and is merely based on his say-so and using an outcome-oriented analysis. Such testimony does not meet the "exacting standards of reliability," *Weisgram*, 528 U.S. at 455, which require far "more than subjective belief or unsupported speculation," *Daubert*, 509 U.S. at 590; *In re Roundup Prod. Liab. Litig.*, 2023 WL 7928751, at *1 (excluding specific causation opinion for, among other things, "offering results-oriented analysis")

**B.** **The Court must preclude Dr. Nabhan from testifying at trial about the reasonableness and necessity of medical expenses**

Dr. Nabhan was disclosed to testify about "reasonableness and necessity of medical expenses and treatment" for each of the Plaintiffs. *See* Hsu Decl., Ex. A (*Harris* Expert Disclosure) at 7; *id.*, Ex. B (*El-Hakam* Expert Disclosure) at 7; *id.*, Ex. C (*Romano* Expert Disclosure) at 7; *id.*, Ex. D (*Daulton* Expert Disclosure) at 7. Yet his expert reports omit any such opinions. *Cf. id.*, Ex. E (Nabhan *Harris* Report); *id.*, Ex. F (Nabhan *El-Hakam* Report); *id.*, Ex. G (Nabhan *Romano* Report); *id.*, Ex. H (Nabhan *Daulton* Report). Each of the expert reports are similarly structured and covers no opinions related to reasonableness or necessity of medical expenses. None of his reports or materials considered list includes any document or details surrounding the medical expenses any of the Plaintiffs incurred. Because Plaintiffs served no "written report" containing, among other things, "a complete statement of all [such] opinions [Dr. Nabhan] will express and the basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B)(i), the Court must exclude any such testimony, *id*. § 37(c)(1); *Goodman*, 644 F.3d at 827 (precluding experts from testifying because plaintiff failed to disclose the experts' reports in a timely manner); *Corizon Health*, 993 F.3d at 739-42 (same). Unsurprisingly, he has also expressly disclaimed any such testimony. *See, e.g.*, Hsu Decl., Ex. J (Nabhan *Daulton* Dep. Tr.) at 102:24-103:2 ("Q. Dr. Nabhan, you are not giving an

1    opinion on Mr. Daulton's medical expenses, are you? I am not. These were not provided to me.").

2    Relatedly, because documents related to Plaintiffs' medical expenses "were not provided to" Dr.

3    Nabhan, *id.*, he does not have sufficient facts and data to support any such opinion. *See* Fed. R.

4    Evid. 702 (making explicit that an expert's testimony must be "based on sufficient facts and data").

5        Moreover, Dr. Nabhan is not qualified  to opine about the reasonableness or necessity of

6    the medical expenses. While he is a medical physician, Dr. Nabhan has not had *any* experience

7    billing patients. *Cf.* Hsu Decl., Ex. O (Nabhan Curriculum Vitae). Nor has he published any

8    research on that subject matter. *Cf. id.* No articles related to medical expenses appear on Dr.

9    Nabhan's materials considered list. *Cf. id.*, Ex. P (Nabhan *Harris* MCL); *id.*, Ex. Q (Nabhan *El-*

10   *Hakam* MCL); *id.*, Ex. R (Nabhan *Romano* MCL); *id.*, Ex. S (Nabhan *Daulton* MCL). This abject

11   lack of experience with patient billing or medical expenses renders Dr. Nabhan wholly unqualified

12   to offer opinions on the reasonableness or necessity of any medical expenses. *See* Fed. R. Evid. 702

13   (making explicit that an expert witness must be qualified by way of his "knowledge, skill,

14   experience, training, or education").

15       **C.    The Court must preclude Dr. Nabhan from offering any "pain and suffering"**

16       **testimony, including the psychological effects of NHL on any of the Plaintiffs**

17       Dr. Nabhan must not offer any such "pain and suffering" testimony at trial, including the

18   psychological effect of NHL diagnosis and treatment. ***First***, he has not provided any such testimony

19   in his expert reports. He even plainly admitted during his deposition to not having done so, for

20   example, with respect to any alleged mental anguish suffered by Plaintiffs:

21       Q. But in the four corners of your expert report you don't discuss any
22       potential psychological Mr. Daulton experienced, as a result of his
         NHL or its treatment, correct?
23
         . . .
24
         A. Yeah, I wasn't able to see a lot of psychological notes . . . . I did
25       not see notes from psychologists or psychiatrists pertaining to this
         particular case in my opinion.
26

27   Hsu Decl., Ex. J (Nabhan Daulton Dep. Tr.) at 104:6-24. On that basis alone he must be precluded

28   from offering any such "pain and suffering" testimony at trial, including the psychological effect

AMENDED MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. CHADHI NABHAN

1   of NHL diagnosis and treatment. Fed. R. Civ. P. 26(a)(2)(B)(i); *id*. § 37(c)(1); *Goodman*, 644 F.3d

2   at 827; *Corizon Health*, 993 F.3d at 739-42.

3         **Second**, any such opinion is not helpful to the jury. To illustrate, when asked "whether Mr.

4   Daulton had any adverse psychological effects associated with his mantle cell lymphoma or his

5   treatment," he promptly put on the hat of a psychologist or psychiatrist, despite having no such

6   qualification, and testified that he "could obviously comment on what patients with lymphoma in

7   general go through treatment in terms of psychological impact, psychological effect" because he is

8   "very familiar with the ups and downs and the roller coaster that [the patients] go through."  Hsu

9   Decl., Ex. J (Nabhan Daulton Dep. Tr.) at 103:3-16. That is plainly improperly. Pain and suffering

10  "inquiry is inherently subjective," *Pearl v. City of Los Angeles*, 36 Cal. App. 5th 475, 491 (2019),

11  and therefore "plaintiff's own testimony commonly establishes his damages for pain and suffering,"

12  *Capelouto v. Kaiser Found. Hosps.*, 7 Cal. 3d 889, 895 (1972). "[N]o witness may express his

13  subjective opinion on the matter." *Beagle v. Vasold*, 65 Cal. 2d 166, 172 (1966). Yet that is precisely

14  what Dr. Nabhan is trying to do here, He was not the Plaintiffs' treating oncologist and did not treat

15  these Plaintiffs' cancers. He did not observe their pain and suffering. He therefore has no first-hand,

16  knowledge of Plaintiffs' pain and suffering. His expert testimony is therefore nothing more than

17  his subjective lay opinion based on second-hand information, not an expert opinion drawing upon

18  *his* "scientific, technical, or other specialized knowledge" to provide help on a topic that requires

19  such expertise, Fed. R. Evid. 702(a) (making clear that expert's scientific, technical, or other

20  specialized knowledge must help the jury on a fact in issue), nor allowed under California law,

21  *Beagle*, 65 Cal. 2d at 172.

22        **Third**, any such opinion is plainly unreliable. Dr. Nabhan is designated as a "case-specific"

23  expert, *see supra* § II.A, so he may not extrapolate what he claims to have observed in other patients

24  to the Plaintiffs here. That is rank speculation. He is admittedly neither a psychologist or a

25  psychiatrist nor Plaintiffs' treating physician but only an expert witness specifically hired for this

26  litigation, and therefore does not possess the necessary qualification to evaluate the "ups and

27  downs" specifically experienced by these Plaintiffs. It is quite telling that he claimed to understand

28  that "patients who undergo stem cell transplant" require "psychological clearance . . . before they

1    undergo the transplant," Hsu Decl, Ex. J (Nabhan *Daulton* Dep. Tr.) at 103:17-20, yet abjectly

2    failed to review the relevant medical reports:

3               I did not read any psychological notes in this particular case.
                Certainly for his situation, would have been a little bit more risky,
4               just because of his known history of manic depressive disorder, that
5               he was on lithium.

6    *Id.* at 103:22-104:2. Despite not having read the psychological notes, Dr. Nabhan nonetheless

7    proceeded to testify under oath that he "**certainly believe[d]**" that Mr. Daulton "would have been

8    **at a higher risk** of developing psychological effects from the treatments that he received." *Id.* at

9    104:2-5 (emphases added). That he failed to review any psychological notes yet ventured into

10   providing testimony—grounded in his "**certain[] belie[f]**"—regarding Mr. Daulton's adverse

11   psychological effects associated with his NHL treatment shows Dr. Nabhan's cavalier, jerry-rigged,

12   and litigation-driven approach to expert testimony based on nothing but his say so. This is precisely

13   the sort of testimony based on "subjective belief or unsupported speculation," *Daubert*, 509 U.S.

14   at 590, which fails to meet the *Daubert*'s "exacting standards of reliability," *Weisgram*, 528 U.S.

15   at 455. The Court should therefore preclude Dr. Nabhan from testifying about "pain and suffering."

16

17   **V.    CONCLUSION**

18          For the foregoing reasons, Monsanto requests that the Court grant this motion.

19   Dated:  September 17, 2024                    Respectfully submitted,

20                                                 BRYAN CAVE LEIGHTON PAISNER LLP

21

22                                                 By: */s/ Linda C. Hsu*
                                                         Linda C. Hsu
23                                                 Counsel for Defendant Monsanto Company

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

    I HEREBY CERTIFY that on September 17, 2024, a copy of the foregoing was filed with the

3

Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing

4

parties of record.

5

6

                                           */s/ Linda C. Hsu*
                                           Linda C. Hsu

7

                                           *Counsel for Defendant Monsanto Company*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. CHADHI NABHAN