UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Kay v. Monsanto Co.*,<br>Case No. 3:21-cv-00175-VC<br><br>*Glassman v. Monsanto Co.*,<br>Case No. 3:20-cv-00024-VC<br><br>*Iona v. Monsanto Co.*,<br>Case No. 3:20-cv-02404-VC<br><br>*Berenfeld v. Monsanto Co.*,<br>Case No. 3:18-cv-01428-VC<br><br>*Proctor v. Monsanto Co.*,<br>Case No. 3:21-cv-00172-VC<br><br>*Belfleur v. Monsanto Co.*,<br>Case No. 3:20-cv-00621-VC<br><br>*Thompson v. Monsanto Co.*,<br>Case No. 3:20-cv-08851-VC<br><br>*Holmes v. Monsanto Co.*,<br>Case No. 3:20-cv-03363-VC<br><br>*Ginkel v. Monsanto Co.*,<br>Case No. 3:22-cv-00358-VC<br><br>*Romano v. Monsanto Co.*,<br>Case No. 3:20-cv-06194-VC | **PRETRIAL ORDER NO. 313: ORDER GRANTING IN PART AND DENYING IN PART MONSANTO'S MOTION TO EXCLUDE EXPERT MARTYN SMITH**<br><br>Re: Dkt. No. 18985 |

*Daulton v. Monsanto Co.*,
Case No. 3:20-cv-08518-VC

*Vander Groef v. Monsanto Co.*,
Case No. 3:19-cv-07858-VC

*El-Hakam v. Monsanto Co.*,
Case No. 3:21-cv-09937-VC

*Harris v. Monsanto Co.*,
Case No. 3:16-cv-05786-VC

Monsanto's motion to exclude the testimony of Dr. Martyn Smith is granted in part and denied in part. This ruling assumes the reader's familiarity with the facts, the applicable legal standard, the prior Daubert rulings in this MDL, and the arguments made by the parties. *See generally In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Pretrial Order No. 45, Dkt. No. 1596); *In re Roundup Products Liability Litigation*, 358 F. Supp. 3d 956 (N.D. Cal. 2019) (Pretrial Order No. 85, Dkt. No. 2799); *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021).

1. Monsanto argues that Smith's handling of Pahwa (2019), Andreotti (2018), and De Roos (2022) requires his exclusion. The primary question here is whether Smith adequately explained why he relied on one study more than another and reliably articulated how he reached his general causation conclusion in the face of conflicting evidence. *See* Pretrial Order No. 288 at 5; *see also* Pretrial Order No. 45 (Dkt. No. 17504) at 35. In the case of Pahwa, Monsanto points out that Smith selectively quoted a portion of the study's findings that showed an association between glyphosate exposure and NHL without noting the result was inconsistent across different glyphosate use metrics. Regarding Andreotti and De Roos, Monsanto argues that although Smith noted in his report that those studies had contrary findings, he didn't describe what their flaws were or how he considered them in his analysis.

Monsanto's arguments have a major flaw: they don't discuss deposition testimony

showing how Smith responded to questioning on his handling of these three studies. An expert report puts the moving party on notice of the theories underlying the expert's opinions—it is then the moving party's job to probe those opinions at deposition. As it is, Monsanto has failed to develop the record. Smith's report, while hardly a model of perfection, suggests he engaged in an analysis of the relevant literature. His report notes that the epidemiological "evidence is not entirely consistent, as there are a limited number of studies and there are methodological issues in many of the studies," and describes in general terms issues that he saw across the studies. Smith Report (*Kay*) (Dkt. No. 18985-3) at 31. His discussion of the three studies invoked by Monsanto could be more fulsome, but his report on the whole is fairly comprehensive. If Monsanto had pointed to deposition testimony showing that Smith's analysis of these studies was wholly inadequate, perhaps it could have won this motion on the papers. That has, of course, occurred more than once in this MDL. If Monsanto had pointed to deposition testimony raising serious questions about the reliability of Smith's analysis, perhaps it could have earned a *Daubert* hearing. That too has occurred plenty of times in this MDL. But Monsanto's motion is too weak to get either of those things here.

     2. Monsanto also attacks Smith's use of the "Key Characteristics" methodology, which it says is a hazard assessment, not a risk assessment, and is therefore not relevant to causation. Pretrial Order No. 45 discusses this distinction: a hazard assessment is "merely the first step in determining whether the substance currently presents a meaningful health risk to human health." Pretrial Order No. 45 at 2. As the Court said there, opinions that "simply parrot IARC's analysis and conclusions are somewhat off topic and are unduly limited," because the IARC monograph only professed to communicate a hazard assessment. *Id.* at 12. The important step for a general causation opinion is the next one: conducting a risk assessment based in the literature. It's clear from Smith's report that he took that next step and conducted a risk assessment based in the literature. This portion of Monsanto's motion is also denied.

     3. Relying on arguments made in its Omnibus Motion (Dkt. No. 18987), Monsanto makes two additional points relating to "multiple statistical tests" and drawing causal inferences.

3

Reply (Dkt. No. 19528) at 1. The Court ruled on both of these issues in Pretrial Order No. 45, and it will not reconsider them. *See* Dkt. No. 19225.

4. Monsanto seeks to exclude testimony about surfactants and trace impurities. Monsanto's motion specifically targets formaldehyde, NNG, and arsenic, which Smith's report says "may enhance the overall toxicity" of Roundup. Smith Report (*Martyn*) (Dkt. 18985-3) at 38, n1. Smith testified at deposition that formaldehyde is "not a known cause of non-Hodgkin['s] lymphoma"; he has "not investigated NNG as a cause of non-Hodgkin's lymphoma"; and arsenic is not known "as a direct cause of NHL." Smith Dep. (*Meyer*) (Dkt. No. 19414-2) at 12:19–22, 15:22–12, 18:9–12. And the plaintiffs confirm that "Dr. Smith is not offering the opinion that any individual impurity in Roundup, independent of glyphosate and Roundup's other components, *causes* NHL," just that the impurities make Roundup "more dangerous." Opp. (Dkt. No. 19414) at 12 (emphasis in original). It's not clear what Smith means by "more dangerous." And more generally, the plaintiffs have been making noise about surfactants since this MDL started, but to this day they have not presented anything beyond bare speculation to support the assertion that the surfactants in Roundup affect the analysis of whether the product causes NHL. Smith may not opine that surfactants or trace impurities in Roundup cause NHL.

5. Finally, Monsanto seeks to exclude testimony by Smith about a warning to Monsanto in 1999 that glyphosate may be genotoxic, and the foreseeability of Roundup causing harm to the gut microbiome. This testimony is not related to NHL causation, and it's unclear how it would be appropriate for Smith to offer it, but the question of its admissibility will be left to the trial court to decide. *See* Pretrial Order No. 202.

**IT IS SO ORDERED.**

Dated: March 13, 2025

_____
VINCE CHHABRIA
United States District Judge

4